**Opinion filed October 3, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00110-CR

_____

**RANDY VIRGIL ECHOLS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 220th District Court**
**Comanche County, Texas**
**Trial Court Cause No. CR04341**

## MEMORANDUM OPINION

A jury found Appellant, Randy Virgil Echols, guilty of two counts of aggravated sexual assault of a child, both first-degree felonies, and assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for thirty years for each offense, to run concurrently. TEX. PENAL CODE ANN. § 22.021 (West 2019). The trial court sentenced Appellant accordingly.

Appellant raises a single issue on appeal, claiming that his trial counsel was ineffective. We affirm.

*Factual and Procedural Background*

On September 4, 2011, Comanche County Sheriff's Deputy Allen Wendt and Investigator Ronald Moe were dispatched to Sowell Creek Park to investigate an allegation that a child had been sexually assaulted. After speaking to the victim's mother, Deputy Wendt arrested Appellant for sexually assaulting nine-year-old K.L.[1]

The victim's mother testified that her three daughters, including K.L., were camping when she received a call that caused her to immediately go to the park. On the way, she called the police and asked them to meet her at the campsite because something had happened to K.L. K.L.'s seventeen-year-old sister Susan (a pseudonym) was the one who called their mother.

Susan testified that she and K.L. shared a bed in Susan's father's camper the night of September 4. Susan remembered waking up and seeing Appellant crouched on the floor between the bed and the door. She recalled Appellant was wearing a white shirt and testified that she was "really freaked out." Susan called out for her father, and Appellant stood up and "acted like he was standing up and walking back inside." Appellant walked outside, and Susan's father also went outside. While they were outside the camper, K.L. told Susan that Appellant had touched her inappropriately.

Investigator Moe set up a forensic interview for K.L. with Amy Callaway at the Hill Country Child Advocacy Center. During the forensic interview, K.L. was

---

[1]We use initials to refer to the child victim, and an alias to refer to her sister. *See* TEX. R. APP. P. 9.10(a)(3) (requiring redaction of sensitive data, which includes "the name of any person who was a minor at the time the offense was committed").

forthcoming with Callaway. K.L. made an outcry of sexual abuse to Calloway during the interview.

In addition to the forensic interview, sexual assault nurse examiner (SANE) Judy LaFrance interviewed and examined K.L. During K.L.'s sexual assault exam, she shared that she had been sleeping in the camper with her sister when she woke up to Appellant rubbing her back and legs. Appellant began touching her and put his hand inside her swimsuit bottoms, then began touching her "in the front" and on her butt. K.L. attempted to wake up her sister but was not able to do so. K.L. tried to turn over and pretend to be asleep, but said that Appellant held her legs down and licked "down there with his tongue," indicating to her vagina. K.L. testified that when Appellant licked her, her ankles were on his shoulders. K.L. further reported to LaFrance that Appellant continued to touch her with his hand and crouched down "like in an Army position" after her sister woke up.

Susie Striegler[2] a certified SANE and custodian of the records at Hendrick Medical Center, testified that K.L. had visible physical injuries to her vagina, which is very uncommon and indicated penetration. In addition to the physical exam, swabs were collected for DNA analysis from the areas on K.L.'s body where she indicated that Appellant had touched her.

Erin Casmus, a forensic scientist with the Texas Department of Public Safety Crime Laboratory in Waco, performed DNA testing of the following items of evidence: blue and white swimsuit bottoms, denim shorts, a buccal swab from Appellant, and K.L.'s buccal swab, vaginal swabs, buttocks swabs, and ankle swabs. Although the tests were negative for semen, Casmus developed DNA profiles from K.L.'s buttocks and ankle swabs that were "consistent with" Appellant's DNA

---

[2]Judy LaFrance was unavailable to testify due to being the primary caretaker for a sick family member. Appellant does not contest LaFrance's absence or Striegler's testimony on appeal.

3

profile. According to Casmus, the probability that a Caucasian male other than Appellant was the contributor of the foreign DNA on K.L.'s buttocks and ankles was one in 4.8 billion, and one in 23,000, respectively.

Following Appellant's convictions, he filed a motion for new trial alleging ineffective assistance of counsel. The trial court conducted a hearing on the motion, during which his trial counsel testified regarding his trial strategy. The trial court denied the motion. On appeal, Appellant raises a single issue arguing that his trial counsel was ineffective because "[i]t was objectively unreasonable not to impeach KL and the other State's witnesses."

*Standard of Review*

Texas courts follow the *Strickland* two-prong test to determine whether trial counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55–56 (Tex. Crim App. 1986). First, an appellant must show that his counsel's performance was deficient; second, the appellant must show that the deficient performance prejudiced the defense. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Strickland*, 466 U.S. at 687. Judicial review of an ineffective-assistance-of-counsel claim is highly deferential to trial counsel and avoids using hindsight to evaluate counsel's actions. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984).

For the performance standard, we must determine whether Appellant has shown by a preponderance of the evidence that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* 466 U.S. at 689. When the record contains no direct evidence of counsel's reasons for the challenged conduct, we "will assume that

4

counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). We "will not conclude [that] the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

We review the totality of the evidence when evaluating an appellant's ineffective-assistance-of-counsel claim. *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (citing *Strickland*, 466 U.S. at 695). An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness of counsel. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Often, the record on direct appeal will not be sufficient to show that trial counsel's representation was so deficient and so lacking as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

"[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). A defendant must overcome the presumption that, under the circumstances, the challenged action could be considered "sound trial strategy." *Id.* at 110 (quoting *Strickland*, 466 U.S. at 689). Failure to make the required showings of deficient performance and sufficient prejudice will defeat claims of ineffective assistance. *Id.*

For the prejudice standard, we determine whether there is a reasonable probability that the outcome would have differed but for counsel's errors. *Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 686; *Andrews v. State*, 159 S.W.3d 98 (Tex. Crim. App. 2005). The reasonable probability must rise to the level that it undermines confidence in the outcome of the trial. *Isham v. State*, 258 S.W.3d 244,

250 (Tex. App.—Eastland 2008, pet. ref'd). "[T]he analysis of the prejudice prong turns on whether the deficiency made any difference to the outcome of the case." *Walker v. State*, 406 S.W.3d 590, 599 (Tex. App.—Eastland 2013, pet. ref'd) (quoting *Riley v. State*, 378 S.W.3d 453, 458 (Tex. Crim. App. 2012)). "This is a heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." *Id.* at 599 (quoting *United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012)).

Here, trial counsel was afforded the opportunity to explain his trial strategy during the hearing on the motion for new trial. An ineffective-assistance claim may be raised in a motion for new trial. *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). Where, as here, ineffective-assistance-of-counsel claims are raised in a motion for new trial, rejected, and reasserted on appeal, "we analyze the ineffective assistance of counsel issue as a challenge to the denial of the motion for new trial." *Minassian v. State*, 490 S.W.3d 629, 641 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (internal quotation marks omitted). We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *State v. Arizmendi*, 519 S.W.3d 143, 148 (Tex. Crim. App. 2017). In this regard, a trial court abuses its discretion when "no reasonable view of the record could support the trial court's ruling." *Collier v. State*, 528 S.W.3d 544, 546 (Tex. App.—Eastland 2016, pet. ref'd).

*Analysis*

On appeal, Appellant broadly alleges that his trial counsel's performance was objectively unreasonable because he failed to impeach K.L. and other State's witnesses.[3] Appellant's sole issue is bifurcated into two distinct arguments: first,

---

[3]Appellant's brief fails to accurately cite to the trial record. The Texas Rules of Appellate Procedure require an appellant to "state concisely all issues or points presented for review" and to make a "clear and concise argument" for each issue raised, "with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1 (f), (i). Rule 38.1(i) requires both citations to legal authority and clear and concise argument for the contentions made in the substantive analysis presented. *Id.*

6

that K.L. should have been impeached, and second, that the cumulative effect of not impeaching other witnesses constitutes deficient performance. Appellant claims that he was prejudiced by trial counsel's failure to impeach witnesses because the jury was permitted to exclusively consider the State's unchallenged jury argument—that K.L.'s testimony was unimpeached by opposing counsel.

1. *Alleged Failure to Impeach Child Victim*

Appellant relies heavily on *Ex parte Saenz* for the proposition that the failure to impeach a key witness with prior inconsistent statements is never sound "trial strategy." *See Ex parte Saenz*, 491 S.W.3d 819 (Tex. Crim. App. 2016). While it is true that, in *Saenz* it was not excusable, the case itself does not create a blanket rule that in *all* cases where counsel fails to impeach any witness such failure results in deficient performance. In *Saenz*, an adult witness to a shooting told officers that although he saw the shooter's face, he could not make it out, and would not be able to recognize the shooter if he saw him again. *Id.* at 827. According to law enforcement testimony, however, the witness identified the defendant from a police photospread. *Id.* The witness also identified the defendant in court as the shooter. *Id.*

The Court of Criminal Appeals concluded that the failure to impeach the witness was objectively unreasonable even if trial counsel's examination of the witness could have opened the door to other unfavorable evidence in the witness's initial statement to police. *Id.* at 829. First, the court pointed out that impeaching the witness's ability to identify the defendant was consistent with other testimony elicited from the witness that he was shot in the back, and likely could not have seen the person shooting him. *Id.* Second, the court determined that the inconsistent statement was essential to the reliability of the identification of the defendant as the shooter—and could have been elicited not only from the witness, but the officer to

7

whom the witness originally made the statement. *Id.* Ultimately in *Saenz*, the failure to impeach the witness prejudiced the defendant due to "the relatively weak evidence" establishing his guilt, and the weight of the unchallenged identification. *Id.* at 833.

At trial, K.L. testified that Appellant placed her ankles on his shoulders and performed oral sex on her. Unlike the identification issue in *Saenz,* here, the placement of K.L.'s ankles is hardly critical given the substantial evidence establishing that Appellant committed the charged aggravated sexual assault. Appellant claims that, at the time of the offense, K.L. did not tell either LaFrance or Callaway that Appellant placed her ankles on his shoulders and did not tell Callaway about the oral sex at all. According to Striegler, what a patient shares during the exam determines whether they will be able to gather possible evidence—including taking photographs and DNA swabs. Despite the lack of a written notation in the SANE report regarding K.L.'s ankle placement during the sexual assault, K.L.'s ankles were swabbed for biological material—ostensibly consistent with her having somehow indicated that her ankles had been in contact with Appellant. Further, the DNA profile developed from the ankle swab was consistent with the known profile developed from Appellant's buccal swab.

During the sexual assault exam, K.L. reported that Appellant, "licked [her] down there with his tongue," and pointed to her vagina. Thus, even if trial counsel had cross-examined K.L. about whether she shared information regarding the position of her ankles during the aggravated sexual assault, the presence of Appellant's DNA on K.L.'s ankles corroborated her testimony.

Appellant equates nine-year-old K.L.'s omission of the oral sex during her forensic interview to a denial. For several reasons, this is unpersuasive. First, further distinguishing *Saenz*, and recognizing that forensic interviewers are trained to ask

open-ended rather than direct questions, there is no evidence K.L. *denied* that Appellant sexually assaulted her with his mouth then changed her testimony. Texas courts have consistently permitted expert testimony explaining the disclosure process seen in sexually abused children, and how it is not unusual for a child to reveal more details as time passes. *See, e.g.*, *Bellard v. State*, No. 05-21-00633-CR, 2023 WL 1097769, at *8–9 (Tex. App.—Dallas Jan. 30, 2023, pet. ref'd) (mem. op., not designated for publication); *Mitchell v. State*, No. 09-19-00027-CR, 2020 WL 4006151, at *18 (Tex. App.—Beaumont July 15, 2020, pet. ref'd) (mem. op., not designated for publication); *Campos v. State*, No. 02-19-00122-CR, 2020 WL 3455901, at *1, *7–9 (Tex. App.—Fort Worth June 25, 2020, pet. ref'd) (mem. op., not designated for publication); *Lessner v. State*, No. 07-19-00094-CR, 2020 WL 2610266, at *2–3 (Tex. App.—Amarillo May 21, 2020, no pet.) (mem. op., not designated for publication); *Gumtow v. State*, No. 03-18-00077-CR, 2019 WL 6869949, at *5–7 (Tex. App.—Austin Dec. 12, 2019, no pet.) (mem. op., not designated for publication); *Martinez v. State*, No. 01-15-00823-CR, 2016 WL 6803233, at *4, *11 (Tex. App.—Houston [1st Dist.] Nov. 17, 2016, pet. ref'd) (mem. op., not designated for publication). Second, Appellant's unsubstantiated claims that the forensic interviewer was advised that K.L. told the SANE nurse about Appellant performing oral sex on K.L. before she completed her questioning are unsupported by the record.

Appellant claims that the inconsistencies between K.L.'s initial outcries during her sexual assault exam and forensic interview were highly beneficial to Appellant's defense and could have easily influenced the jury. Appellant points out that Count Two of the indictment was dependent on evidence supporting the charge that the oral sex act indeed occurred, and he points out that because K.L. did not consistently share those details at the time of the incident, this would have been

impactful as to the jury findings. As we have already discussed, we disagree—even if there is no direct written documentation by the forensic investigator that Appellant placed K.L.'s ankles on his shoulders, Appellant's DNA was discovered on K.L.'s ankles, and there is a record of the allegation of oral sex in the SANE report. Not focusing cross-examination on the position of the child's ankles during a sexual assault on a child, when there was a clear identification of Appellant's DNA found on the child's ankles, may have very well been acceptable trial strategy.

Additionally, the record on this matter is not well-developed. At the hearing on Appellant's motion for new trial, trial counsel for Appellant was not asked specifically about K.L.'s statements including or omitting any reference to the oral assault or her ankle positioning.[4] *See Saenz*, 491 S.W.3d at 828 (citing *Garcia*, 57 S.W3d at 440 (discussing an absence of trial counsel's reasons for the challenged conduct requires an appellate court to "assume a strategic motivation [by trial counsel] if any can possibly be imagined"). Considering that on appeal we are required to give deference to trial counsel's actions and avoid using hindsight, we find that trial counsel's decision not to attempt to impeach K.L. on this specific issue to be a reasonable trial strategy. *See Ingham*, 679 S.W.2d at 509. It is Appellant's burden to overcome the presumption that, under the circumstances, the challenged action was "sound trial strategy." *Rylander*, 101 S.W.3d at 110 (quoting *Strickland*, 466 U.S. at 689). He did not.

Although we do not find that the lack of impeachment of K.L. constitutes deficient performance, a harm analysis only confirms our conclusion. Appellant

---

[4]Trial counsel for Appellant was asked *globally* why he did not "present impeachment evidence." He responded that the file was very large and that he had to "make a strategy" focusing on the 'big issue[s]" of the case. He said, "[s]o a lot of these statements I thought were not enough to throw the case." "There are a lot of inconsistent statements. But the big ones that would have been exculpatory" is what he focused on at trial. There was no question propounded to him regarding cross-examining on the positioning of K.L.'s ankles; however, trial counsel did address his trial strategy with respect to conflicting witness statements regarding Appellant wearing a green shirt or a white shirt.

10

attempts to use *Saenz* to show harm.  However, the statements on identification of the perpetrator in *Saenz* were clearly in opposition, unlike here.  *See Saenz*, 491 S.W.3d at 829.  First, Saenz told detectives that he could not see anything, but then he later testified that he was able to identify the defendant.  *Id.*  Here, the SANE report corroborates K.L.'s testimony—that Appellant placed her ankles on his shoulders and performed oral sex on her.  Without such a statement, there was no reason for DNA swabs to be taken *of K.L.'s ankles*.  Further, the lack of any statement to the forensic interviewer is not the same as a denial of an occurrence.  The oral-sex offense was notated in the SANE report, regardless of whether trial counsel had attempted to impeach K.L. about the placement of her ankles and who was told that in the initial examinations of K.L.

2. *Alleged Failure to Impeach Other Witnesses*

Appellant's second argument alleges that trial counsel should have attempted to impeach Susan, Investigator Moe, Callaway, and Striegler.  These allegations range from the failure to question who collected what evidence, to whether K.L. made an outcry about the oral-sex offense, to what color shirt Appellant was wearing that evening.  Trial counsel testified at the hearing on the motion for new trial that any choice not to impeach a witness related to trial strategy.  Trial counsel intended to avoid opening the door to the extraneous offenses of Appellant sexually molesting two children in Arizona, and he testified that he vigorously cross-examined witnesses and investigated any impeachment evidence.  Trial counsel further testified that he was able to prevent the admission of any testimony from an outcry witness, which was "hugely important for the Defense."  Additionally, the forensic interview video of K.L. telling her version of events was never played for the jury.

None of the alleged failures to impeach specific witnesses amounted to a showing of deficient performance that sufficiently prejudiced Appellant.  Instead,

11

the evidence presented was more than enough to support the jury's findings of guilt. Multiple witnesses (K.L. and Susan) testified that Appellant was in the camper that night. K.L. and Striegler testified that Appellant touched K.L. on her buttocks, between her legs, and licked her vaginal area. Callaway testified that K.L. made an outcry of sexual assault and identified Appellant as the assailant. Further, Striegler testified that K.L. suffered physical trauma caused by penetration and had vaginal injuries uncommon for a nine-year-old. Regardless of what color shirt Appellant wore that evening, his DNA profile was consistent with swab samples taken from K.L.'s ankles and buttocks. We conclude that even had trial counsel attempted to impeach witnesses over the comparatively trivial issues raised by Appellant, the jurors, as the sole judges of the weight and credibility of the evidence, had more than sufficient evidence presented at trial to convict Appellant of the charged offenses. *See Bernal v. State*, 483 S.W.3d 266, 269 (Tex. App.—Eastland 2016, pet. ref'd) ("The trier of fact is the sole judge of the weight and credibility of the evidence."). Therefore, Appellant failed to meet his burden of demonstrating a reasonable probability that any alleged deficiency, including any claimed cumulative effect, would have resulted in a different outcome of the case. *See Walker*, 406 S.W.3d at 599 (citing *Riley*, 378 S.W.3d at 458); *see also Swinney v. State*, 663 S.W.3d 87, 90 (Tex. Crim. App. 2022) (citing *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018)).

Therefore, considering the totality of the evidence, and giving deference to trial counsel's presumed professional conduct and trial strategy, we hold that trial counsel was not ineffective as Appellant suggests. *See Wiggins*, 539 U.S. at 521; *Strickland*, 466 U.S. at 687, 690; *Ingham*, 679 S.W.2d at 509. We overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the judgments of the trial court.


W. BRUCE WILLIAMS

JUSTICE


October 3, 2024

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.