Anthony BERNAL, Appellant

v.

The STATE of Texas, Appellee

No. 11–14–00053–CR

Court of Appeals of Texas, Eastland.

Opinion filed January 28, 2016

M. Michele Greene, Odessa, for Appellant.

R. N. (Bobby) Bland, District Attorney, Michael Bloch, Assistant, Odessa, for Appellee.

Panel consists of: Wright, C.J., Willson, J., and Bailey, J.

## OPINION

MIKE WILLSON, JUSTICE

The jury found Anthony Bernal guilty of the first-degree felony offense of aggravated robbery with a deadly weapon.[1] The jury assessed Appellant's punishment at confinement for thirty years, and the trial court sentenced him accordingly. He asserts three issues on appeal. We affirm.

### I. The Charged Offense

The grand jury indicted Appellant for aggravated robbery with a deadly weapon. PENAL § 29.03(a)(2). A person commits the felony offense of robbery "if, in the course of committing theft ... and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." Id.

---

1. See TEX. PENAL CODE ANN. § 29.03(a)(2), (b) (West 2011).

§ 29.02(a). The offense becomes aggravated if the person "uses or exhibits a deadly weapon." *Id.* § 29.03(a)(2). Aggravated robbery is a first-degree felony. *Id.* § 29.03(b). The punishment range is confinement for life or for any term not less than five years and not more than ninetynine years; a fine of up to $10,000 may also be imposed. *Id.* § 12.32. Appellant pleaded not guilty and proceeded to trial.

## II. *Evidence at Trial*

World Finance is a finance company that makes loans, collects payments on the loans, and completes customer's tax filings. Angelica Olivas testified that, on March 27, 2013, she was working alone in the Odessa branch of World Finance. That afternoon, two men entered the branch wearing dark, hooded sweatshirts and masks; one of the men was wielding a silver handgun. The men crossed the lobby and stood next to Olivas, who was at her desk. The men demanded that she show them where the company kept the money. The men told Olivas that they only wanted money; they did not want to hurt her. The men were behind her, and she felt one of the men press something against the back of her head. She did not see what was against her head, but she thought it was the silver handgun. Olivas showed the men the cash drawer, and they took approximately $1,600 from the drawer and $100 from Olivas's purse. Olivas was extremely scared. She thought that she would be shot by the bigger, heavier man that held the silver handgun, and she feared imminent bodily injury from him.

Gilbert Ramirez testified that, as he drove his white Dodge pickup past World Finance, he saw two men run out of World Finance and get into a red pickup parked in the alley to the left of the building.[2] Ramirez thought that the men were suspicious because they wore "long sleeve hoodies" in "100 degree weather" and because of where the red pickup had been parked. Ramirez called 9-1-1, maintained a constant view of the red pickup and the men, and followed the red pickup when it left the alley.

Ramirez noticed that a decal that resembled a calf and a horse was on the rear window of the red pickup. Police officers responded and pursued the red pickup, which wrecked and became disabled when the driver turned too sharply. Police officers completed a felony stop of the red pickup and demanded that the two men get out of the red pickup. The driver, Jeremy Ramos, complied but yelled, "[D]on't shoot my cousin ... he's on the phone with his wife, he knows he's going to the pen." Appellant, the passenger, was described as less compliant and passively resistant.

Police officers at the scene searched Appellant and found money tucked under his shirt. Police officers also recovered a silver handgun from the front yard of a property that was located on the route taken by Appellant and Ramos. Olivas testified that the handgun recovered looked like the silver handgun used in the robbery of World Finance. Patrick Chadwick, a detective with the Odessa Police Department, completed an interview of Appellant.

## III. *Issues Presented*

Appellant asserts in his first issue that the trial court abused its discretion when it dismissed a juror. In his second issue, Appellant alleges that the trial court erred when it denied his motion for an instructed

---

**2.** Video evidence taken from the security camera of Cake Mix, a store located across the street from World Finance, corroborated Ramirez's testimony.

verdict. In his third and final issue, Appellant challenges the sufficiency of the evidence. We will review Issues Two and Three together and then address Appellant's first issue.

## IV. *Analysis*

### A. *Issues Two and Three: Denial of Instructed Verdict and Sufficiency of Evidence*

Appellant challenges both the sufficiency of the evidence to support his conviction and denial by the trial court of his motion for instructed verdict. Appellant contends that there was insufficient evidence to prove the following: (1) that he was physically in World Finance on March 27, 2013, (2) that he stole money from World Finance, and (3) that he pointed a gun at Olivas. We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex.App.–Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim.App.2010). We also address Appellant's issue on the trial court's denial of his motion for instructed verdict under a sufficiency analysis. *See Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App.1990) ("A challenge to the trial judge's ruling on a motion for an instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction.").

The trier of fact is the sole judge of the weight and credibility of the evidence; we may not reevaluate the weight and credibility of the evidence so as to substitute our own judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999). We presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim. App.2007). The standard of review is the same for direct and circumstantial evidence cases. *Isassi*, 330 S.W.3d at 638. "Direct and circumstantial evidence are treated equally: 'Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.'" *Clayton*, 235 S.W.3d at 778 (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App.2007)). The jury is free to draw reasonable inferences from basic facts to ultimate facts. *Sanders v. State*, 119 S.W.3d 818, 820 (Tex.Crim.App. 2003).

Olivas observed two men, who wore dark hoodies and masks, rob her and World Finance and then flee; she thought that she would be shot by the bigger, heavier man, who held a silver handgun and pointed the gun at her. Ramirez saw two men, who wore long-sleeved hoodies on a 100–degree day, leave the World Finance building, enter an alley, get into a red pickup, and drive away. Video evidence taken from the security camera of Cake Mix, a store located across the street from World Finance, corroborated Ramirez's testimony.

Ramirez followed the red pickup until the police stopped it. Ramirez maintained a constant view of the red pickup. Appellant and Ramos were aware that Ramirez had followed them, and they attempted to flee. Once the red pickup was stopped by

police and Appellant exited the pickup, the police searched Appellant and found money stuffed under his shirt; the police also found money in the red pickup. These facts, if believed by the jury, implicate Appellant in the robbery at World Finance. *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *see. also Guevara v. State,* 152 S.W.3d 45, 50 (Tex.Crim.App.2004) (attempts to conceal incriminating evidence); *Whittington v. State,* 580 S.W.2d 845, 846–47 (Tex.Crim.App. [Panel Op.] 1979) (flight is circumstance from which to infer guilt).

In addition, Appellant's own statements, given while he was in police custody, implicated him in the aggravated robbery. In response to one of Detective Chadwick's questions about the robbery, Appellant responded, "I don't know what you want to know man, you got us." Appellant later gave reasons to justify his actions when he remarked that no one would give him a job; he had to survive, which did not make it right, but if he had a chance, he might have passed by World Finance.

Appellant also acknowledged Ramirez's pursuit of the red pickup. Appellant made several comments in response to Ramirez's actions, "Man, this f——g dude followed us in this truck forever. . . . Couldn't shake that dude." Appellant then said, "Yeah, I'm sure he saw everything because if he didn't he wouldn't be; he was persistent. . . . We got caught today because of that . . . dude in the white truck." Appellant also said, "I got caught because I committed robberies, but I got caught today because the guy [Ramirez] followed us."

Detective Chadwick, during the post-arrest interview of Appellant, asked where the gun was. Appellant replied, "There really ain't no gun inside that . . . in that car . . . not inside the truck." Appellant later said, "The gun is f——g tossed somewhere." Another witness, L.C., testi-

fied that, while she played in her front yard, she observed a red pickup speed by her house closely followed by a white pickup. She heard a loud "pop," which she thought was a gunshot, and she ran into her house and hid. When she looked out the window, L.C. saw a silver handgun in the front yard. Officers recovered the silver handgun from L.C.'s front yard. Olivas testified that the gun looked like the gun that was used in the robbery of World Finance.

■ Appellant contends that there was insufficient evidence to prove that he pointed a gun at Olivas. Police officers asked Olivas if she could identify the robbers, but she never saw the robbers' faces during the robbery. She did point out that "one of them was kind of thin, the other one was kind of heavy." She further noted that the larger man was the one that held the silver handgun. Olivas noted that Appellant and his cousin had similar body types to those who had robbed World Finance. Olivas thought Appellant was the bigger, heavier man that came into World Finance and robbed her.

The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given their testimony. *See* TEX.CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). As such, the jury was entitled to accept or reject any or all of the testimony of any witness, including that of Appellant, and was free to draw reasonable inferences from the evidence presented. *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *Sanders,* 119 S.W.3d at 820. We have reviewed the evidence in the light most favorable to the verdict, and we hold that a rational trier of fact could have found beyond a reasonable doubt that Appellant was present in World Finance, stole money from World Finance, and pointed a gun at Olivas. *See Jackson,* 443 U.S. at 319, 99

S.Ct. 2781; *Clayton,* 235 S.W.3d at 778. We overrule Appellant's second and third issues.

### B. Issue One: Dismissal of Juror Patterson

 Appellant contends that the trial court erred when it discharged Juror Patterson because he was unable to find child care. The trial court has discretion to determine whether a juror has become disabled and whether to seat an alternate juror. *Scales v. State,* 380 S.W.3d 780, 783 (Tex.Crim.App.2012). In the event that a juror is "found to be *unable . . . to perform* [its] duties," the judge may replace that juror with an alternate. CRIM. PROC. art. 33.011(b) (West Supp.2015) (emphasis added).[3] We review the decision of the trial court, to replace a juror, for an abuse of discretion. *Scales,* 380 S.W.3d at 784. However, the trial court's decision must be sufficiently supported by the record, and we may not presume that the trial court made a proper decision. *Id.* at 783. In our examination, we view the evidence in the light most favorable to the ruling and will only reverse if the ruling of the trial court was arbitrary or unreasonable. *Id.*

 Juror Patterson notified the trial court before trial began that his wife and child were both ill and that no one else was available to care for his child. Because the trial court had selected alternates under Article 33.011(a), the judge asked the parties if they would agree to the discharge of Juror Patterson. Appellant refused to agree. Over Appellant's objection, the trial court discharged Juror Patterson. The trial court explained that, "although there's not an agreement of the parties, the Court finds there is good cause to discharge him and that is because Mr.

Patterson is the only person available to take care of his child and he's unable to perform his duties today."

While our court has not addressed this particular situation, several of our sister courts have upheld the dismissal of a juror in similar circumstances. *See Owens v. State,* 202 S.W.3d 276, 277 (Tex.App.–Amarillo 2006, pet. ref'd) (upholding juror's dismissal when juror was unable to secure child care); *Edwards v. State,* 981 S.W.2d 359, 366–67 (Tex.App.–Texarkana 1998, no pet.) (same); *see also Brown v. State,* No. 10–07–00279–CR, 2010 WL 138331, at *5–6 (Tex.App.–Waco Jan. 13, 2010, pet. dism'd) (mem. op., not designated for publication) (upholding juror's dismissal when juror needed to care for spouse). We agree with our sister courts' analysis and find it applicable in the facts presented in this case. We hold that the trial court did not abuse its discretion when it discharged Juror Patterson because he had to care for his sick child and spouse. *See* CRIM. PROC. art. 33.011; *Scales,* 380 S.W.3d at 783; *Brown,* 2010 WL 138331, at *5–6; *Owens,* 202 S.W.3d at 277; *Edwards,* 981 S.W.2d at 366–67. We overrule Appellant's first issue.

### V. This Court's Ruling

We affirm the judgment of the trial court.

CRIM. PROC. art. 33.011(a).

---

3. A district court judge may impanel, at a maximum, four jurors to sit as alternates.