**Opinion filed July 3, 2025**



**In The**

# Eleventh Court of Appeals

_____

**No. 11-23-00290-CR**

_____

**GREG ANTHONY BARRERA III, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 441st District Court**

**Midland County, Texas**

**Trial Court Cause No. CR56874**

**M E M O R A N D U M   O P I N I O N**

A jury found Appellant, Greg Anthony Barrera III, guilty of the murder of Samuel Anaya III. *See* TEX. PENAL CODE ANN. § 19.02(b) (West Supp. 2024). The jury assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of sixty years, and the trial court sentenced him accordingly. Appellant challenges his conviction in five issues.

Appellant argues that the trial court (1) erred when it replaced a juror with an alternate, (2) improperly limited his cross examination of a witness, (3) abused its discretion in admitting hearsay evidence, (4) abused its discretion in denying his requested accomplice-witness jury instruction, and (5) improperly instructed the jury that the verdict could be less than unanimous. We affirm.

*Factual and Procedural History*

Appellant does not challenge the sufficiency of the evidence to support his conviction. Thus, we recite only those facts pertinent to the resolution of the issues presented.

On the night of May 29, 2021, a hip-hop showcase was held at Kessler's Hall in Midland, Texas. The event was attended by both Anaya and Appellant. Appellant had paid for a performance slot under the name CozyBoy Fiji. Appellant's friends, Rylan Rodriguez, Auden "Chapo" Varela Rojero, and Isaiah "Taz" Bustamante, were also in attendance and with Appellant for most of the evening. In exchange for their testimony at trial, each were granted use immunity.[1]

After Appellant's performance, Rodriguez, Rojero, and Bustamante left with Appellant in his vehicle to go to a graduation party at a local hotel. Rodriguez, Rojero, and Bustamante then left the graduation party with the understanding that they would be going with Appellant to buy marihuana. According to those three witnesses, Appellant drove, Rodriguez was seated in the front passenger seat, Rojero was in the back passenger seat, and Bustamante was seated in the backseat behind Appellant. Appellant, however, returned to Kessler's and backed into a parking spot

---

[1] "Use immunity" is defined as "[i]mmunity from the use of the compelled testimony (or any information derived from that testimony) in a future prosecution against the witness." *Use immunity*, BLACK'S LAW DICTIONARY (12th ed. 2024). It differs from transactional immunity, which provides a witness "[i]mmunity from prosecution for any event or transaction described in the compelled testimony." *Transactional immunity*, BLACK'S LAW DICTIONARY (12th ed. 2024).

before being asked to move by a promotor.[2]  As Appellant drove out, Rodriguez observed Appellant pull up next to "someone . . . talking on the phone"[3] and then shoot him.  Rojero identified Appellant as the individual who fired the gun. Bustamante initially testified that he had been "really in and out of it because [he] was on alcohol and bars" and attributed the loud noise he heard to "someone throwing something" at the vehicle.  Following a break so that Bustamante could watch his prior recorded statement to law enforcement outside the presence of the jury, Bustamante acquiesced that he had witnessed Appellant shoot Anaya.

After the shooting, Appellant dropped off Rojero at the hotel.  Bustamante, Rodriguez, and Appellant made their way back to Appellant's father's trailer, and Rodriguez was "brought into the trailer passed out."  With Appellant and Bustamante having previously departed the trailer, it was Rodriguez that was awakened by the arrival of law enforcement.  Bustamante first testified that Appellant had driven to Pecos, Texas with Bustamante still in the backseat. Bustamante later modified his testimony, stating that he had driven Appellant a portion of the way.  Rodriguez, Rojero, and Bustamante each denied knowing that Appellant had returned to Kessler's for the purpose of shooting Anaya.

Desiree Ramirez, a bystander who had been at Kessler's for the showcase, identified Appellant as an occupant in the vehicle involved in the shooting.  Ramirez testified that she had gone to her own vehicle during a break in performances and had noticed Appellant's vehicle circling the lot "very slowly" before Anaya exited the building.  Ramirez then witnessed the vehicle pull up alongside Anaya and heard

---

[2]Rodriguez could not recall being approached while they were in the vehicle at Kessler's.

[3]Andrew Teixeira testified he had been with Anaya at Kessler's earlier in the evening but had taken an Uber home before the showcase was over.  Teixeira later learned that he had a missed call and voicemail from Anaya.  The voicemail of Anaya was admitted into evidence at trial.  Anaya can be heard yelling, "I've been shot," before the line cuts off.

gunshots go off. William Z. Harison Kessler, the son of the owner of Kessler's Hall, testified that although he could not identify the driver of the vehicle, he was outside when he heard gunshots go off and saw muzzle flashes from the driver's side of the vehicle.

Jamarrion Jackson, the showcase promoter, confirmed he had asked Appellant and his friends to move after Appellant had backed his vehicle in front of the venue. Jackson testified that Appellant moved without issue, and then within "either seconds or minutes, [but] no more than two minutes," Jackson heard "gunshots go off." Jackson testified that he had not mentally registered what had happened until he "saw the kid who was shot run up to" him, screaming, running back toward the venue before collapsing. Although Jackson did not see the shooter, he identified Appellant as the driver of the vehicle involved. Jackson additionally testified that earlier that same evening, Appellant had brandished a gun during his practice set.

Four 9-millimeter spent casings were retrieved from the alleyway. No other evidence of fired ammunition or other weapons were found at the crime scene, and the gun was never recovered. A single 9-millimeter shell casing, however, was found on the driver's side windshield of Appellant's vehicle, and surveillance footage from the venue confirmed that Appellant's vehicle had circled the venue at 9:55 p.m., minutes before the shooting.

Richard Fries, a deputy medical examiner at the Tarrant County Medical Examiner's Office, performed an autopsy on Anaya. Fries opined that although Anaya had a blood alcohol level of .123 and THC in his system at the time of death, neither were in amounts high enough to contribute to Anaya's death. Fries ruled Anaya's death a homicide attributable to a single bullet passing through Anaya's right arm, entering into his chest and injuring his right lung and major vessels above the heart.

4

*Juror*

In his first issue, Appellant contends that the trial court erred when it excused a juror because she was unable to find childcare for her sick child.

The trial court has discretion to determine whether a juror has become disabled under Article 36.29 and to seat an alternate juror under Article 33.011 of the Texas Code of Criminal Procedure. TEX. CRIM. PROC. ANN. art. 33.011(b), 36.29 (West Supp. 2024); *Scales v. State*, 380 S.W.3d 780, 783 (Tex. Crim. App. 2012). We review a trial court's decision to excuse and replace a juror for an abuse of discretion. *Scales*, 380 S.W.3d at 784; *Bernal v. State*, 483 S.W.3d 266, 271 (Tex. App.—Eastland 2016, pet. ref'd). The trial court's decision must be sufficiently supported by the record. *Scales*, 380 S.W.3d at 784. In our examination, we view the evidence in the light most favorable to the trial court's ruling and will only reverse if that ruling was arbitrary or unreasonable. *Id.* Disability is not limited to physical disease but includes "any condition that inhibits a juror from fully and fairly performing the functions of a juror." *Reyes v. State*, 30 S.W.3d 409, 411 (Tex. Crim. App. 2000) (quoting *Griffin v. State*, 486 S.W.2d 948, 951 (Tex. Crim. App. 1972)).

The record is clear that the jury was impaneled and sworn before the trial court excused the juror in question. Prior to her release, the juror notified the trial court that her child was ill with a fever and would not be permitted back at school for two days; her husband was out-of-state; and she had no other childcare options available. Appellant requested a two- or three-day continuance in lieu of replacing the juror, and the State argued such delay would be burdensome for out-of-town witnesses already present for trial. Over Appellant's objection, the trial court excused the juror and seated an alternate. The trial court reasoned that the severity and extent of the child's illness were uncertain and might continue indefinitely.

We have previously addressed seating an alternate juror in a similar circumstance. *See Bernal*, 483 S.W.3d at 271. In *Bernal*, the trial court discharged a juror after learning that the juror had been unable to find childcare for his sick child. *Id.* We held that the trial court had not abused its discretion in discharging the juror. *Id.* As in *Bernal*, the record shows that the trial court, having weighed the court's scheduling needs and the juror's expressed familial responsibilities, relied on its discretionary authority to excuse a juror based on disability. *See id.*; *see also Owens v. State*, 202 S.W.3d 276, 277 (Tex. App.—Amarillo 2006, pet. ref'd) (upholding trial court's disability determination based on a juror's inability to secure childcare); *Brown v. State*, No. 10–07–00279–CR, 2010 WL 138331, at *5–6 (Tex. App.—Waco Jan. 13, 2010, pet. dism'd) (mem. op., not designated for publication) (upholding the trial court's dismissal of a juror when the juror needed to care for his spouse).

On these facts, the trial court did not abuse its discretion. *See* CRIM. PROC. art. 33.011(b); *Scales*, 380 S.W.3d at 783; *Bernal*, 483 S.W.3d at 271. We overrule Appellant's first issue.

### Cross Examination and Right to Confrontation

In his second issue, Appellant contends that the trial court abused its discretion and violated his Sixth Amendment right to confrontation when it refused his request to cross-examine Rojero about his deferred adjudication status.

A. *Standard of Review and Applicable Law*

We review the trial court's admission of evidence under an abuse of discretion standard. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or when it acts arbitrarily or unreasonably. *Id.* at 669 (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim App. 1990)). Therefore, we

uphold a trial court's ruling on admissibility if it is within the "zone of reasonable disagreement." *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021) (quoting *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)).

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI; *Johnson v. State*, 490 S.W.3d 895, 909 (Tex. Crim. App. 2016) ("The main purpose behind the Confrontation Clause is to secure for the opposing party the opportunity of cross-examination."). The primary purpose of the right to confrontation is to grant the defendant an opportunity to test the believability of a witness and the truth of his testimony. *Johnson*, 490 S.W.3d at 909 (citing *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974)). Trial courts, however, "'retain wide latitude . . . to impose reasonable limits on such cross-examination,' so long as those limits do not operate to infringe upon the Confrontation Clause's guarantee of 'an opportunity for effective cross-examination.'" *Johnson v. State*, 433 S.W.3d 546, 551–52 (Tex. Crim. App. 2014) (emphasis omitted) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). The trial court does not abuse its discretion in limiting a defendant's cross-examination when the defendant fails to establish a "causal connection" or "logical relationship" between the sought-after testimony and a defensive theory. *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010); *Windham v. State*, No. 11-09-00029-CR, 2010 WL 5093760, at *3 n.1 (Tex. App.—Eastland Dec. 2, 2010, pet. ref'd) (mem. op., not designated for publication). Relevant here, a witness's mere status of being on deferred adjudication community supervision is not sufficient, by itself, to establish a potential bias or motive to testify favorably for the State. *See Irby*, 327 S.W.3d at 140.

B. *Analysis*

Here, Appellant sought to question Rojero on an unrelated theft-of-a-firearm charge, for which he was placed on deferred adjudication in July 2021—two months after the shooting. The State argued such cross-examination was impermissible because Appellant had failed to make a showing of a causal connection as required under *Irby*. Appellant argued it was enough that Rojero had been offered "deferred with this DA's office in this courthouse, in this court."

As previously established, the existence of a deferred adjudication status is not enough to establish bias. *See id*. Appellant did not illicit testimony from Rojero or otherwise demonstrate that Rojero was offered deferred adjudication in exchange for his testimony or that he was testifying out of fear that his probationary status would be revoked.[4] Moreover, the record contains evidence—including Rojero's testimony affirming that he had *not* been promised anything to testify in a certain way nor threatened to testify in a certain way[5]—that refutes an inference of undue influence or bias resulting from the mere existence of his deferred adjudication

---

[4]We disagree that Rojero's statements in response to the following line of questioning was evidence that he "might shade his testimony to attempt to curry favor with the [S]tate":

> [DEFENSE COUNSEL]: And if you violate any one provision, the District Attorney's office could move to not only adjudicate you but punish you up to a maximum of two years in the state jail, right?
>
> [ROJERO]: Yes, sir.
>
> [DEFENSE COUNSEL]: You wouldn't want to make the DA's office mad, would you?
>
> [ROJERO]: No.
>
> [DEFENSE COUNSEL]: You wouldn't want to violate your probation, would you?
>
> [ROJERO]: No, sir.

[5]As previously discussed, he was offered only "use" immunity.

status. *See id.*; *see, e.g.*, *Charles v. State*, No. 01-19-00725-CR, 2022 WL 3093025, at \*8 (Tex. App.—Houston [1st Dist.] Aug. 4, 2022, pet. ref'd) (mem. op., not designated for publication) (concluding trial court did not abuse its discretion in refusing to allow the appellant to cross-examine a witness regarding the witness's pending criminal charges where the witness stated she had never spoken with the prosecutors regarding "any arrangement for leniency in her pending cases in exchange for her testimony against" the appellant); *Garcia v. State*, No. 13-19-00390-CR, 2020 WL 7757378, at \*3–4 (Tex. App.—Corpus Christi–Edinburg Dec. 30, 2020, pet. ref'd) (mem. op., not designated for publication) (concluding trial court did not abuse its discretion in refusing to allow the appellant to cross-examine a witness regarding the witness's deferred adjudication community supervision where "both [the witness] and the prosecutor explicitly stated that [the witness] was not offered or given any leniency in exchange for his testimony"); *Fernando Venegas v. State*, No. 09-18-00137-CR, 2019 WL 2273868, at \*2 (Tex. App.—Beaumont May 29, 2019, pet. ref'd) (mem. op., not designated for publication) ("The record does not demonstrate that A.O. received any deals or expected to receive favorable treatment in exchange for testifying for the State, nor does the record indicate that A.O. cooperated with the State out of fear that her probation would be revoked. We conclude that Venegas failed to show a logical connection between A.O.'s testimony and A.O.'s probationary status and pending charges."); *Chauncey v. State*, No. 14-17-00327-CR, 2018 WL 3237154, at \*4 (Tex. App.—Houston [14th Dist.] July 3, 2018, no pet.) (mem. op., not designated for publication) (concluding the same). Accordingly, the trial court did not abuse its discretion in prohibiting Appellant's cross-examination regarding Rojero's deferred adjudication status. *See Irby*, 327 S.W.3d at 145. We overrule Appellant's second issue.

*Hearsay*

In his third issue, Appellant argues that the trial court abused its discretion in allowing hearsay testimony regarding "sneak dissing."[6]

We review a trial court's ruling on the admissibility of hearsay under an abuse of discretion standard. *Irsan v. State*, 708 S.W.3d 584, 619 (Tex. Crim. App. 2025). Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is generally inadmissible. TEX. R. EVID. 801(d), 802. "Backdoor hearsay" is testimony that contains, by necessary inference, a hearsay statement even though the question and answer does not directly contain the statement. *Sanchez v. State*, 595 S.W.3d 331, 336 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("The 'backdoor' (or indirect) hearsay doctrine aims to prevent parties from eliciting testimony that indirectly reveals the substance of out-of-court statements." (quoting *Schaffer v. State*, 777 S.W.2d 111, 113 (Tex. Crim. App. 1989))); *Rachell v. State*, No. 11-03-00192-CR, 2004 WL 2244200, at *1 (Tex. App.—Eastland Sept. 30, 2004, pet. ref'd) (not designated for publication). "The test for 'backdoor hearsay' is whether the eliciting party's 'sole intent in pursuing [a] line of questioning was to convey to the jury' the contents of out-of-court statements." *Koury v. State*, 684 S.W.3d 537, 549 (Tex. App.—Austin 2024, pet. ref'd) (quoting *Head v. State*, 4 S.W.3d 258, 262 (Tex. Crim. App. 1999)).

A trial court's error, if any, in allowing hearsay testimony constitutes non-constitutional error which "must be disregarded if it 'does not affect substantial rights.'" *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021). "An error does not affect substantial rights if the appellate court has 'a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had

---

[6]Rojero testified that "sneak dissing" is the act of indirectly disrespecting another through song lyrics.

but a slight effect.'" *Id.* (quoting *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018)); *Ellison v. State*, 494 S.W.3d 316, 328–29 (Tex. App.—Eastland 2015, pet. ref'd) (collecting cases where backdoor hearsay was alleged).

Appellant takes issue with the following testimony:

[THE STATE]: Was there any -- to your knowledge, was there any sneak dissing going on between 1230[7] and [Appellant]?

[DEFENSE COUNSEL]: Object, that's hearsay, Your Honor. Those are out-of-court statements we can't cross-examine.

[THE STATE]: Judge, they're not for the truth of the matter asserted.

THE COURT: Overruled.

[DEFENSE COUNSEL]: Denies confrontation as well.

THE COURT: Overruled.

[ROJERO]: May I hear the question again?

[THE STATE]: Sure. Was there any sneak dissing going on between the 1230 guys and [Appellant]?

[ROJERO]: Between that specific group 1230 and [Appellant], no, there was not.

[THE STATE]: Was there anybody in that specific group that was, for lack of a better way to describe it, in a sneak dissing battle with [Appellant]?

[ROJERO]: Not in the 1230 group but people that associated themselves with that group, there was more or less some type of sneak dissing between them.

---

[7]"1230" was described as a street in Midland, Texas, a music label, and a criminal gang.

11

[DEFENSE COUNSEL]:Objection, Your Honor. Renew my objection to hearsay and denial of confrontation to what these other people are saying.

THE COURT: Response?

[THE STATE]: I didn't ask him what they were saying. We're just talking about general -- in general terms.

[DEFENSE COUNSEL]:That's backdoor hearsay, Your Honor.

THE COURT: Overruled.

. . . .

[THE STATE]: Do you know who it was that -- in the 1230 group that that was going on with?

[ROJERO]: I don't know his actual name, but his rap name was XO Lil Sauce.[8]

[THE STATE]: Okay.

[DEFENSE COUNSEL]:Your Honor, we offer our continuing objection to this line.

THE COURT: Overruled.

Appellant argues that "the existence of the sneak disses and their putative content were hearsay," which the State sought to elicit as proof of a feud between Appellant and the 1230 associates, and that "witnesses [being] allowed to refer to the alleged 'sneak dissing' without playing the tracks compounded the error."

---

[8]Noah Vargas, a friend of the decedent, testified that he goes by the nickname XO Lil Sauce and performs solo and as part of a group called XO. Vargas denied being a part of the 1230 label, having "beef" with Appellant, or putting out a track "diss[ing]" Appellant.

However, hearsay protections are triggered only by the introduction of an out-of-court statement offered for its truth. *See* TEX. R. EVID. 801(d). In this case, the witness was not asked to—and did not—quote, paraphrase, or otherwise describe the content of any alleged "sneak diss[]" tracks. Rojero expressly denied any sneak dissing between Appellant and the 1230 associates and vaguely acknowledged that "more or less some type of sneak dissing" may have occurred between Appellant and XO Lil Sauce. To the extent the reference of "some type of sneak dissing" between Appellant and XO Lil Sauce could be construed as implying an out-of-court statement, the statement itself is elusive; its content, context, and speaker are undefined; and the record does not establish that the State's sole intent in eliciting the testimony was to convey that content. *See Koury*, 684 S.W.3d at 549. Therefore, the trial court did not abuse its discretion in overruling Appellant's hearsay objections. *See Irsan*, 708 S.W.3d at 619. We overrule Appellant's third issue.

*Charge Error*

In his fourth and fifth issues, Appellant asserts that the trial court erred with respect to the trial court's charge. First, Appellant contends the trial court abused its discretion when it denied his request for an accomplice witness instruction as to Rodriguez, Rojero, and Bustamante. Then, Appellant argues the trial court's charge improperly instructed the jury to convict him on less than a unanimous verdict.

A. *Standard of Review*

The purpose of the trial court's charge is to instruct the jurors on the "law applicable to the case." *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021) (per curiam) (quoting CRIM. PROC. art. 36.14). Legal analysis of a complaint regarding the charge involves two steps; first, we determine whether error exists. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we find error, we then analyze that

error for harm, and the standard of review depends on whether the error was preserved. *Alcoser*, 663 S.W.3d at 165 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)).

When the charge error is preserved by objection at trial, the reviewing court will reverse only upon a showing of "some harm." *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019); *Almanza*, 686 S.W.2d at 171. In contrast, a failure to object at trial permits reversal only upon a showing of "egregious harm." *Chambers*, 580 S.W.3d at 154. Harm is assessed in consideration of four factors: "(1) the charge itself; (2) the state of the evidence including contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole." *Maciel v. State*, 689 S.W.3d 609, 615–16 (Tex. Crim. App. 2024). Regardless of the degree of harm required to be shown, "to obtain a reversal for jury charge error, the appellant must have suffered actual harm and not merely theoretical harm." *Reed v. State*, 680 S.W.3d 620, 626 (Tex. Crim. App. 2023). "[W]hen 'a record reveals a risk of harm that is so small that it may properly be characterized as not "remotely significant," or where the risk of harm is "almost infinitesimal," any harm resulting from the error is only theoretical harm.'" *Maciel*, 689 S.W.3d at 615 (quoting *French v. State*, 563 S.W.3d 228, 239 (Tex. Crim. App. 2018)).

B. *Accomplice Witnesses*

A witness can be an accomplice either as a matter of law or as a matter of fact. *Ash v. State*, 533 S.W.3d 878, 884 (Tex. Crim. App. 2017); *Zamora v. State*, 411 S.W.3d 504, 510 (Tex. Crim. App. 2013) (citing *Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006)). A witness is an accomplice as a matter of law when "the witness has been charged with the same offense as the defendant or a lesser-included offense, or 'when the evidence clearly shows that the witness could have

14

been so charged.'" *Zamora*, 411 S.W.3d at 510 (quoting *Cocke*, 201 S.W.3d at 747–48).  A witness that receives immunity for testifying does not render the witness an accomplice-witness as a matter of law.  *See Moulton v. State*, 508 S.W.2d 833, 836 (Tex. Crim. App. 1974) (rejecting argument that immunity from State made witness an accomplice-witness as a matter of law); *Foyt v. State*, 602 S.W.3d 23, 41 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (witness given use immunity was not an accomplice as a matter of law as a result of such immunity); *Jester v. State*, 62 S.W.3d 851, 855 (Tex. App.—Texarkana 2001, pet. ref'd) (declining to adopt a rule that "any witness who is granted immunity should be deemed an accomplice as a matter of law").

Appellate courts have frequently described accomplices as individuals who participate with a defendant "before, during, or after the commission of the crime," "act[] with the requisite culpable mental state," and perform an "affirmative act that promotes the commission of the offense with which the defendant is charged." *Zamora*, 411 S.W.3d at 510 (quoting *Cocke*, 201 S.W.3d at 748).

If a witness is an accomplice as a matter of law, the trial court must affirmatively instruct the jury that the witness is an accomplice whose testimony must be corroborated.  *Id.*  But where there is conflicting or inconclusive evidence as to whether a witness is an accomplice, the trial court should include a two-part accomplice witness instruction asking "the jury to (1) decide whether the witness is an accomplice as a matter of fact, and (2) apply the corroboration requirement, but only if it has first determined that the witness is an accomplice." *Id.*

Appellant contends that the evidence presented at trial entitled him to an accomplice witness instruction because it raised, at the very least, a fact issue as to

whether Rodriguez, Rojero, and Bustamante were accomplices in Anaya's murder.[9] Specifically, Appellant argues that the three voluntarily returned to Kessler's with Appellant, lied to law enforcement in the course of the investigation, and accepted immunity agreements by the State. While it is true each accepted use immunity agreements, were voluntarily present in the vehicle driven by Appellant that evening, and were initially dishonest about their presence during the shooting when confronted by law enforcement, at no point, did any of the three claim that an individual other than Appellant was the shooter or that they had knowledge that Appellant had returned to Kessler's for the purpose of committing murder or shooting Anaya.[10] Mere presence at the scene of a crime is not enough to render a witness an accomplice—nor is a witness an accomplice merely because he knew of a crime and failed to disclose it. *See Druery v. State*, 225 S.W.3d 491, 498–500 (Tex. Crim. App. 2007) (holding that two witnesses' knowledge that the appellant was planning on murdering someone and presence at the murder were not affirmative acts entitling the appellant to an accomplice witness instruction); *see also West v. State*, No. 11-23-00034-CR, 2025 WL 567556, at *7 (Tex. App.—Eastland Feb. 21, 2025, no pet. h.) (mem. op., not designated for publication) (concluding same). Rather, there must be sufficient evidence to connect the witness to the crime as a "blameworthy participant" with the requisite mental state. *Cocke*, 201 S.W.3d at 748; *see Druery*, 225 S.W.3d at 498. And though Bustamante equivocated regarding whether he drove Appellant to a different city at some point after the shooting, nothing in the record indicates Bustamante—or Rodriguez or Rojero— acted with the requisite culpable mental state. *See Cocke*, 201 S.W.3d at 748; *see,*

---

[9]At trial, Appellant stated that "[w]e are not arguing that there are any accomplices as a matter of law in this case, simply accomplices as a matter of fact."

[10]The State noted on the record that "there is not now nor has there ever been an indictment or any charging instrument filed against . . . any of the three witnesses."

*e.g.*, *Castillo v. State*, 517 S.W.3d 363, 374 (Tex. App.—Eastland 2017, pet. ref'd) (concluding witness did not act with requisite mental state and was, therefore not an accomplice where witness was aware the appellant had a gun with him and drove the appellant to the location of the shooting because she also testified that she had no knowledge of the appellant's true intentions); *Morelos v. State*, No. 11-22-00119-CR, 2024 WL 39896, at *3 (Tex. App.—Eastland Jan. 4, 2024, pet. ref'd) (mem. op., not designated for publication) (concluding same where the witness "hid[] the murder weapon after driving [a]ppellant away from the crime scene"). Therefore, an accomplice witness instruction was not "law applicable to the case," and the trial court did not err in denying the inclusion of such instruction. *See Bell*, 635 S.W.3d at 645. Having found no charge error, our analysis ends. *See Ngo*, 175 S.W.3d at 744. We overrule Appellant's fourth issue.

### C. *Jury Unanimity*

In his fifth issue, Appellant asserts that the trial court's charge failed to require unanimity regarding whether he violated Section 19.02(b)(1) or (b)(2) of the Texas Penal Code because subsections (b)(1) and (b)(2) are separate offenses for purposes of jury unanimity.

Under the federal and state constitutions, "[a] jury must reach a unanimous verdict in order to convict." *Ramos v. Louisiana*, 590 U.S. 83, 90 (2020); *see* TEX. CONST. art. V, § 13; *see also* CRIM. PROC. art. 36.29(a); *Ngo*, 175 S.W.3d at 745. "The jury must agree that the defendant committed one specific crime, but this does not mean that the jury must unanimously find that the defendant committed that crime in one specific way or even with one specific act." *O'Brien v. State*, 544 S.W.3d 376, 382 (Tex. Crim. App. 2018). "[T]he requirement of jury unanimity is not violated by a jury charge that presents the jury with the option of choosing among

various alternative manner and means of committing the same statutorily defined offense." *Id.*

Relevant here, Section 19.02(b) of the Texas Penal Code provides that a person commits murder if he "(1) intentionally or knowingly causes the death of an individual; [or] (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." PENAL § 19.02(b)(1), (2). This court has already held that subsections (b)(1) and (b)(2) do not describe different offenses; rather, they merely set forth alternative methods of committing the same offense. *Walter v. State*, 581 S.W.3d 957, 968 (Tex. App.—Eastland 2019, pet. ref'd); *Moreno v. State*, No. 11-22-00235-CR, 2024 WL 2965171, at *4 (Tex. App.—Eastland June 13, 2024, no pet.) (mem. op., not designated for publication). Thus, a jury is not required to be unanimous as to whether defendant committed murder under Section 19.02(b)(1) or 19.02(b)(2). *See Walter*, 581 S.W.3d at 968; *Yost v. State*, 222 S.W.3d 865, 877–78 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (concluding the same).

In considering potential charge error, we first determine whether the charge contained error by permitting a nonunanimous verdict as Appellant claims. *See Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011); *Ngo*, 175 S.W.3d at 744. The trial court's charge here instructed the jury to find Appellant guilty if he (1) intentionally or knowingly caused Anaya's death or (2) intended to cause serious bodily injury to Anaya and committed an act clearly dangerous to human life that caused Anaya's death. *See* PENAL § 19.02(b)(1), (2). Regardless of whether the jury determined that Appellant intentionally or knowingly caused Anaya's death, or that he caused Anaya's death by committing an act clearly dangerous to human life with the intent to cause serious bodily injury, there was only one single crime: murder. *See Walter*, 581 S.W.3d at 968. Thus, the trial court's charge in the instant case

properly required a unanimous verdict. *See O'Brien*, 544 S.W.3d at 382; *Escarcega v. State*, No. 11-24-00008-CR, 2025 WL 1129022, at \*3 (Tex. App.—Eastland Apr. 17, 2025, no pet. h.) (mem. op., not designated for publication).

Appellant nonetheless argues "[o]ther courts' precedent, holding that subsections (b)(1) and (b)(2) merely define alternate manners of committing a single offense, is wrong." Appellant's brief makes no mention of our concurring precedent. *See Walter*, 581 S.W.3d at 968; *see also, e.g.*, *Smith v. State*, 436 S.W.3d 353, 378 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ("The jury was not required to agree unanimously as to the manner and means by which [the] appellant" committed murder.); *Lozano v. State*, 359 S.W.3d 790, 821 (Tex. App.—Fort Worth 2012, pet. ref'd) (collecting cases holding same). We decline Appellant's invitation to now alter our precedent. *See Walter*, 581 S.W.3d at 968; *Moreno*, 2024 WL 2965171, at \*4; *Escarcega*, 2025 WL 1129022, at \*3. We overrule Appellant's fifth issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS
JUSTICE

July 3, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

19